1

2

3

4

5

6                     UNITED STATES DISTRICT COURT

7                    CENTRAL DISTRICT OF CALIFORNIA

8

9    BRENDA D. ACKERMANN,              Case No. CV 15-5120 (SS)

10                    Plaintiff,

11        v.                           MEMORANDUM DECISION AND ORDER

12   CAROLYN W. COLVIN, Acting
     Commissioner of Social
13   Security,

14                    Defendant.

15

16   _____

17                                I.

18                            INTRODUCTION

19

20        Brenda D. Ackermann ("Plaintiff") brings this action seeking

21   to reverse the decision of the Commissioner of the Social Security

22   Administration (hereinafter the "Commissioner" or the "Agency")

23   denying her application for disability benefits.  The parties

24   consented, pursuant to 28 U.S.C. § 636(c), to the jurisdiction of

25   the undersigned United States Magistrate Judge.  For the reasons

26   stated below, the decision of the Commissioner is AFFIRMED.

27

28

## II.

### PROCEDURAL HISTORY

Plaintiff filed an application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") on December 13, 2010. (Administrative Record ("AR") 64, 88). Plaintiff's alleged disability began on November 29, 2010. (AR 64). Plaintiff's application was initially denied on July 27, 2011 and denied on reconsideration on May 18, 2012. (AR 64-75, 77-86). On July 12, 2012, Plaintiff requested a hearing before an administrative law judge. (AR 105-07). A hearing was held before Administrative Law Judge ("ALJ") Robert A. Evans on October 21, 2013 ("the ALJ Hearing"). (AR 52). Plaintiff appeared with counsel and testified. (AR 52-63). The ALJ issued an unfavorable decision on January 7, 2014, finding that Plaintiff was not disabled within the meaning of the Social Security Act. (AR 38-51). Plaintiff requested review of the ALJ's decision on January 7, 2014, which the Appeals Council denied on May 13, 2014. (AR 1-10). Plaintiff filed this action on July 7, 2015. (Docket Number ("Dkt. No.") 1).

## III.

### FACTUAL BACKGROUND

Plaintiff was born on August 31, 1962. (AR 64). Plaintiff is a high school graduate. (AR 199). Prior to her alleged disability onset date, Plaintiff worked as an in-home care service provider from 2004 to 2006. (AR 55, 205). Plaintiff testified

that she suffers from back pain due to scoliosis and the insertion of a metal rod into her back when she was a child.  (AR 57-58).  Plaintiff testified that she previously had breathing problems due to Chronic Obstructive Pulmonary Disease ("COPD"), but that the disease was not affecting her breathing anymore.  (AR 60).

**A.   Medical History**

**1.  Dianne L. DeFreece, Psy.D.**

On February 19, 2007, Dianne L. DeFreece, a licensed clinical psychologist, examined Plaintiff.  (AR 265).  Notes from the examination revealed that Plaintiff had a fifteen-year history of methamphetamine abuse including an arrest in 2002 for drug possession.  (AR 265).  Dr. DeFreece recommended treatment for depression and encouraged Plaintiff to attend meetings at a substance abuse program.  (AR 265).

**2.  Homayoun Saeid, M.D.**

On July 28, 2008, Dr. Saeid performed a "Complete Internal Medicine Evaluation" of Plaintiff.  (AR 266-70).  The summary report of the evaluation revealed that although Plaintiff smoked a pack of cigarettes per day, her "breath sounds are symmetric" with no unusual findings.  (AR 266).  Plaintiff informed Dr. Saied that she was diagnosed with hypertension about 2006 and that she was abusing methamphetamine at that time.  Plaintiff further informed

1   Dr. Saeid that she quit using methamphetamine in 2007.[1] Dr. Saeid
2   concluded that Plaintiff could walk six hours and sit six hours in
3   an eight-hour workday.  (AR 270).

5   **3.  Shahid Kahn, M.D.**

7       On March 31, 2010, Dr. Kahn examined Plaintiff, who complained
8   of hypertension and depression.  (AR 280).  Dr. Kahn noted that
9   Plaintiff had been a smoker for twenty-seven years, but that her
10  lungs sounded "clear to auscultation."[2] (AR 281).  Plaintiff noted
11  a pain level of "zero."  (AR 284).  On February 2, 2011, Dr. Kahn
12  again examined Plaintiff and diagnosed her with COPD.  (AR 340-
13  41).  On April 3, 2012, Dr. Kahn's again examined Plaintiff and
14  noted her lungs as "clear to auscultation bilaterally" with ongoing
15  COPD.  (AR 431-32).  On November 14, 2012, Dr. Kahn's evaluation
16  of Plaintiff yielded the same results as to her lung health and
17  continuing COPD.  (AR 489-91).  The same results were also noted
18  on September 11, 2013.  (AR 509-10).

20  **4. Doddanna Krishna, M.D.**

22      On November 29, 2010, Plaintiff was admitted to Antelope
23  Valley Hospital with increasing cough, shortness of breath and

---

25  [1] This statement is contradicted by Progress Notes in the record
26  which indicate that as of December 19, 2007, Plaintiff was
    continuing to engage in methamphetamine abuse. (See AR 265).
27  [2] "Auscultation is listening to the sounds of the body during a
    physical examination."  Laura J. Martin, M.D., M.P.H., et al.,
    Auscultation,        MedlinePlus,       (July       7,      2016),
28  https://medlineplus.gov/ency/article/002226.htm.

swelling.  (AR 294-300).  Dr. Krishna noted in her "final diagnoses" the following conditions:  [c]ongestive heart failure; [c]ardiomyopathy; [d]rug abuse; [p]neumonia; [b]ilateral small pleural effusions; [c]hronic smoker; [c]hronic obstructive pulmonary disease with exacerbation; [h]ypertension; and [t]roponin elevation.  (AR 300).  Plaintiff was discharged on December 3, 2010 as "much improved" with medications.  (AR 300). Dr. Krishna then referred Plaintiff for x-ray diagnostics.  (AR 318-24).  An x-ray dated November 29, 2010 of Plaintiff's chest revealed "pulmonary vascular congestion," (AR 319), but x-rays two, three and four days later showed "[n]ormal pulmonary vascularity." (AR 321-23).

### 5. Dean Chiang, M.D.

On April 9, 2011, Dr. Chiang gave Plaintiff a comprehensive internal medical evaluation.  (AR 330-33).  Plaintiff's "chief complaint[]" was congestive heart failure.  Plaintiff complained of daily shortness of breath, for which she used an inhaler.  (AR 330).  Dr. Chiang noted that Plaintiff's lungs were, "[s]ymmetric with normal excursions . . . [c]lear to auscultation throughout." (AR 332).  Dr. Chiang opined that Plaintiff's shortness of breath was likely due to COPD.  (AR 333).  Dr. Chiang also opined that, "[g]iven her chronic obstructive pulmonary disease, she should avoid working around dust, fumes, or gasses."  (AR 333).

1          **6. A. Pan, M.D.**

2

3          On July 1, 2011, Dr. Pan issued a medical opinion based on

4     Plaintiff's medical records.  (AR 72-74).  Dr. Pan stated that

5     Plaintiff should "[a]void concentrated exposure" to fumes, odors,

6     dusts, and gasses.  (AR 73).

7

8          **7. K. Beig, M.D.**

9

10         On April 4, 2012, Dr. Beig issued a medical opinion based on

11    Plaintiff's medical records.  (AR 82-84).  Dr. Beig also stated

12    that Plaintiff should "[a]void concentrated exposure" to fumes,

13    odors, dusts, and gasses.  (AR 84).

14

15                              **IV.**

16         **THE FIVE STEP SEQUENTIAL EVALUATION PROCESS**

17

18         To qualify for disability benefits, a claimant must

19    demonstrate a medically determinable physical or mental impairment

20    that prevents him from engaging in substantial gainful activity

21    and that is expected to result in death or to last for a continuous

22    period of at least twelve months.  Reddick v. Chater, 157 F.3d 715,

23    721 (9th Cir. 1998) (citing 42 U.S.C. § 423(d)(1)(A)).  The

24    impairment must render the claimant incapable of performing the

25    work he previously performed and incapable of performing any other

26    substantial gainful employment that exists in the national economy.

27    Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42

28    U.S.C. § 423(d)(2)(A)).

                                  6

To decide if a claimant is entitled to benefits, an ALJ conducts a five-step inquiry.  20 C.F.R. §§ 404.1520, 416.920.  The steps are:

(1)   Is the claimant presently engaged in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.

(2)   Is the claimant's impairment severe?  If not, the claimant is found not disabled.  If so, proceed to step three.

(3)   Does the claimant's impairment meet or equal one on the list of specific impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1?  If so, the claimant is found disabled.  If not, proceed to step four.

(4)   Is the claimant capable of performing his past work?  If so, the claimant is found not disabled. If not, proceed to step five.

(5)   Is the claimant able to do any other work?  If not, the claimant is found disabled.  If so, the claimant is found not disabled.

Tackett, 180 F.3d at 1098-99; see also Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001) (citing Tackett); 20 C.F.R. §§ 404.1520(b)-404.1520(f)(1) & 416.920(b)-416.920(f)(1).

The claimant has the burden of proof at steps one through four and the Commissioner has the burden of proof at step five.

7

1    Bustamante, 262 F.3d at 953-54.  If, at step four, the claimant

2    meets his burden of establishing an inability to perform past work,

3    the Commissioner must show that the claimant can perform some other

4    work that exists in "significant numbers" in the national economy,

5    taking into account the claimant's residual functional capacity

6    ("RFC"), age, education, and work experience.  Tackett, 180 F.3d

7    at 1098, 1100; Reddick, 157 F.3d at 721; 20 C.F.R. §§

8    404.1520(f)(1), 416.920(f)(1).  The Commissioner may do so by the

9    testimony of a vocational expert or by reference to the Medical-

10   Vocational Guidelines appearing in 20 C.F.R. Part 404, Subpart P,

11   Appendix 2 (commonly known as "the grids").  Osenbrock v. Apfel,

12   240 F.3d 1157, 1162 (9th Cir. 2001) (citing Tackett).

13

14                                  **V.**

15                          **THE ALJ'S DECISION**

16

17       On November 18, 2013, the ALJ issued a decision denying

18   Plaintiff's application.  (AR 38-51).  The ALJ employed the five-

19   step sequential evaluation process and concluded that Plaintiff

20   was not disabled within the meaning of the Social Security Act.

21   (AR 43-46).  At the first step, the ALJ observed that Plaintiff

22   had not engaged in substantial gainful activity since the alleged

23   onset of Plaintiff's disability.  (AR 43).  At step two, the ALJ

24   found that Plaintiff was impaired by hypertension and congestive

25   heart failure.  (Id.).  At step three, the ALJ found that the

26   severe impairments at step two did not meet or medically equal a

27   listed impairment.  (Id.).  At step four, the ALJ found that

28   Plaintiff possessed the RFC to "perform light work as defined in

                                    8

1   20 CFR 416.967(b), except that she "should avoid working around

2   dust, fumes, or gasses." (<u>Id</u>.). The ALJ rejected Plaintiff's

3   credibility on the grounds that her daily activities - which

4   included driving, living with her boyfriend, pulling weeds twice a

5   week, cross-stitching and crocheting daily, and light housework -

6   were inconsistent with the degree of claimed disability. (AR 44).

7   The ALJ also stated that the claimant's "history/current drug

8   addiction is not clear, which raises question (sic) to

9   credibility." (<u>Id</u>.). The ALJ noted that claimant admitted that

10  her COPD has been resolved. (<u>Id</u>.). Plaintiff was 48 years old,

11  which is defined as a younger individual under the regulations, on

12  the date the application was filed. (AR 45). Plaintiff has a high

13  school education and is able to communicate in English. (AR 46).

14  The ALJ determined that Plaintiff would be unable to perform her

15  past relevant work as an in-home caregiver. (AR 45). Finally, at

16  step five, the ALJ concluded that, based on Plaintiff's RFC, age,

17  education, work experience, there are jobs that exist in

18  significant numbers in the national economy that Plaintiff could

19  perform. (AR 45-46). Accordingly, the ALJ found that Plaintiff

20  was not disabled at any time from the date of her application. (AR

21  46).

22                                **VI.**

23                        **STANDARD OF REVIEW**

24

25      Under 42 U.S.C. § 405(g), a district court may review the

26  Commissioner's decision to deny benefits. "The court may set aside

27  the Commissioner's decision when the ALJ's findings are based on

28  legal error or are not supported by substantial evidence in the

9

record as a whole." <u>Auckland v. Massanari</u>, 257 F.3d 1033, 1035 (9th Cir. 2001) (citing <u>Tackett</u>, 180 F. 3d at 1097); <u>Smolen v. Chater</u>, 80 F.3d 1273, 1279 (9th Cir. 1996) (citing <u>Fair v. Bowen</u>, 885 F.2d 597, 601 (9th Cir. 1989)).

"Substantial evidence is more than a scintilla, but less than a preponderance." <u>Reddick</u>, 157 F.3d at 720 (citing <u>Jamerson v. Chater</u>, 112 F.3d 1064, 1066 (9th Cir. 1997)). It is "relevant evidence which a reasonable person might accept as adequate to support a conclusion." <u>Id.</u> (citing <u>Jamerson</u>, 112 F.3d at 1066; <u>Smolen</u>, 80 F.3d at 1279). To determine whether substantial evidence supports a finding, the court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" <u>Auckland</u>, 257 F.3d at 1035 (quoting <u>Penny v. Sullivan</u>, 2 F.3d 953, 956 (9th Cir. 1993)). If the evidence can reasonably support either affirming or reversing that conclusion, the court may not substitute its judgment for that of the Commissioner. <u>Reddick</u>, 157 F.3d at 720-21 (citing <u>Flaten v. Sec'y of Health & Human Servs.</u>, 44 F.3d 1453, 1457 (9th Cir. 1995)).

## VII.

## DISCUSSION

Plaintiff contends that the ALJ erred in failing to consult a vocational expert ("VE") at step five of the evaluation process. (Memorandum in Support of Complaint ("MSC"), Dkt. No. 20 at 1). Specifically, Plaintiff argues that the consultation of a VE was

1  required to determine the impact of the ALJ's suggestion to avoid

2  "working around dust, fumes, or gasses" on Plaintiff's ability to

3  find jobs in the national economy.  (MSC 6).  The Court disagrees

4  with this contention.  Accordingly, for the reasons discussed

5  below, the Court finds that the ALJ's decision must be AFFIRMED.

6

7  **The ALJ Properly Relied On The Grids In Determining**

8  **Plaintiff's Disability Status**

9

10  At step five of the sequential evaluation process, the burden

11  shifts to the Commissioner to show that "the claimant can perform

12  a significant number of other jobs in the national economy," taking

13  into consideration claimant's RFC, age, education and work

14  experience.  Hoopai v. Astrue, 499 F.3d 1071, 1074-75 (9th Cir.

15  2007) (quoting Thomas v. Barnhart, 278 F.3d 947, 955 (9th Cir.

16  2002)).[3]  The Commissioner can show that there are a significant

17  number of other jobs in the national economy that the claimant can

18  perform by taking the testimony of a VE, or by using the grids.

19  Tackett, 180 F.3d at 1101 (citing Desrosiers v. Sec'y of Health &

20  Human Servs., 846 F.2d 573, 577-78 (Pregerson, J., concurring) (9th

21  Cir. 1988)).  An alleged non-exertional limitation, however, "does

22  not automatically preclude application of the grids.  The ALJ

23  _____

24  [3] Hoopai specifically distinguished Burkhart v. Bowen, 856 F.2d
    1335 (9th Cir. 1988), upon which Plaintiff here primarily relies.

25  See Hoopai, 499 F.3d at 1077.  The ALJ in Burkhart relied upon
    information outside of the record to speculate about what the

26  claimant could do.  Here, the ALJ relied on record evidence, i.e.,
    Plaintiff's medical records, the expert evidence, and her daily

27  activities, to determine what she was capable of doing.  The Court
    finds that the present facts are controlled by Hoopai and Burkhart

28  is distinguishable.

11

should first determine if a claimant's non-exertional limitations significantly limit the range of work permitted by his exertional limitations. Tackett, 180 F.3d at 1132. The grids "consist of a matrix of [the four factors] and set forth rules that identify whether jobs requiring a specific combination of these factors exist in significant numbers in the national economy." Hoopai, 499 F.3d at 1075 (alteration in original) (quoting Heckler v. Campbell, 461 U.S. 458, 461-62 (1983)).

Where a claimant's qualifications correspond to the job requirements indicated by the grids, the grids "direct a conclusion as to whether work exists that the claimant could perform." Id. (quoting Heckler, 461 U.S. at 462). Although an ALJ can use the grids without VE testimony when a claimant alleges a non-exertional limitation, "the grids are inapplicable when a claimant's non-exertional limitations are sufficiently severe so as to significantly limit the range of work permitted by the claimant's exertional limitations." Id. (quoting Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1998)) (emphasis added). If a non-exertional limitation is sufficiently severe so as to limit the range of work permitted by the claimant's exertional limitations, a VE's testimony is required. Id. at 1076. An environmental limitation is an example of a non-exertional limitation. Tackett, 180 F.3d at 1102.

As noted above, when non-exertional limitations exist that are not sufficiently severe enough to limit the claimant's range of work, reliance on the grids is appropriate. See Hoopai, 499

12

1   F.3d at 1075 (mild or moderate depression not sufficiently severe
2   to require VE testimony); <u>Razey v. Heckler</u>, 785 F.2d 1426, 1430-31
3   (9th Cir.), <u>modified</u>, 794 F.2d 1348 (1986) (agency's use of grids
4   acceptable where limitations from claimant's "generalized anxiety
5   disorder" did not significantly affect the range of sedentary work
6   otherwise available); <u>Angulo v. Colvin</u>, 577 Fed. Appx. 686, 687
7   (9th Cir. 2014) (noting that the plaintiff's postural and
8   environmental limitations were not sufficiently severe to prevent
9   reliance on grids); <u>Landa v. Astrue</u>, 283 Fed. Appx. 556, 558 (9th
10  Cir. 2008) (noting that the plaintiff's depression, which did not
11  prevent plaintiff from housework, personal care, and shopping, was
12  not sufficiently severe to prevent reliance on grids).[4]

14      In the present case, Plaintiff's COPD or other non-exertional
15  limitations were not "sufficiently severe" to prevent the ALJ from
16  relying on the grids.   At the hearing before the ALJ, Plaintiff
17  admitted that her breathing was not bothering her anymore.   (AR
18  60).   Plaintiff was not receiving treatment for her COPD and no

_____

20  [4] Earlier caselaw found that reliance on the grids was inappropriate
    where the claimant had an "inability to tolerate dust or fumes."
21  <u>See</u> <u>Kail v. Heckler</u>, 722 F.2d 1496, 1498 (9th Cir. 1984).   The
    Court notes that this decision pre-dates the Ninth Circuit's
22  decision in <u>Hoopai</u>, which clarified that reliance on the grids was
    acceptable if the non-exertional limitation was not "sufficiently
23  severe," i.e., the non-exertional limitation would not impact the
    available jobs.   Here, while Plaintiff's limitation was described
24  as a recommendation to "avoid concentrated fumes, etc.", Plaintiff
    testified that by the time of the hearing, her COPD was not a
25  problem any longer.   (<u>See</u> AR 60 Q: "Do you have breathing issues?
    A: I did have but I don't really have a whole lot right now.").
26  Moreover, the record indicates that Plaintiff continued to smoke a
    pack of cigarettes a day.   (AR 267).   Plaintiff's continued smoking
27  suggests that her non-exertional environmental limitations were
28  not severe.

doctor opined that it was a disabling condition.  Instead, the
doctors simply advised that Plaintiff should "avoid" concentrated
fumes.   These facts do not establish that Plaintiff's non-
exertional environmental limitation was sufficiently severe to
prevent reliance on the grids.

Plaintiff contends that the ALJ erred at step five by failing
to consult a VE.  (MSC 6).  Plaintiff cites Social Security Ruling
("SSR") 85-15 which states:

> Where a person has a medical restriction to avoid
> excessive amounts of noise, dust, etc., the impact on
> the broad world of work would be minimal because most
> job environments do not involve great noise, amounts of
> dust, etc.

> Where an individual can tolerate very little noise,
> dust, etc., the impact on the ability to work would be
> considerable because very few job environments are
> entirely free of irritants, pollutants, and other
> potentially damaging conditions.

> Where the environmental restriction falls between very
> little and excessive, resolution of the issue will
> generally require consultation of occupational reference
> materials or the services of a [vocational expert].

1  SSR 85-15.  (MSC 5).  Plaintiff contends that the ALJ's finding

2  that Plaintiff "should avoid working around dust, fumes, or gasses"

3  left doubt as to Plaintiff's ability to tolerate varying amounts

4  of such irritants.  (MSC 6).  Plaintiff claims that the ALJ was

5  therefore required to consult a VE to resolve the issue.  (MSC 6;

6  See SSR 85-15).  Plaintiff correctly argues that an inability to

7  tolerate all dust, fumes and gasses would severely restrict her

8  access to a number of jobs in the national economy, and therefore

9  the consultation of a vocational expert would be required.  See SSR

10  85-15; see also Hoopai, 499 F.3d at 1076.  However, the evidence

11  shows that Plaintiff was not so restricted.  In fact, the only

12  recommendation was for Plaintiff to "avoid" concentrated fumes and

13  dust.  Consistent with SSR 85-15, a recommendation to merely "avoid"

14  dust or fumes would have a minimal impact on work available to

15  Plaintiff.  This Court is not persuaded that Plaintiff's non-

16  exertional limitation is sufficiently severe to require the

17  consultation of a VE.

18

19      **1.   Plaintiff's RFC Accurately Reflects The Non-**

20           **Severity Of Her Environmental Limitations**

21

22      The grids provide a sound basis for evaluating a claimant who

23  asserts both exertional and non-exertional limitations.  Hoopai,

24  499 F.3d at 1075 (quoting Razey, 785 F.2d at 1430).  A VE must be

25  consulted only when a plaintiff's non-exertional limitations are

26  "sufficiently severe as to significantly limit the range of work"

27  which the plaintiff can perform.  Id.

28

Here, the ALJ based his recommendation that Plaintiff "should avoid working around dust, fumes, or gasses" on the opinion of Dr. Chiang.  (AR 45, 333).  There is nothing in Dr. Chiang's opinion to indicate that Plaintiff suffered from an environmental restriction that would "significantly limit the range of work" which Plaintiff could perform.  See id.  In fact, none of Plaintiff's physicians expressed or implied that Plaintiff could "tolerate very little noise, dust" which would significantly limit the work available to her.  See SSR 85-15.  The record indicates just the opposite.  Drs. Chiang and Beig both cautioned against "concentrated exposure" to dust, fumes and gasses.  (AR 73, 84).  Because Plaintiff's environmental limitation did not "significantly limit" her employment opportunities, those limitations must be considered non-severe.  See Hoopai, 499 F.3d at 1075.

**2.  Plaintiff's Environmental Limitations Are Not "Sufficiently Severe" And They Do Not Significantly Limit The Range Of Work She Can Perform**

The Ninth Circuit has held that even if a non-exertional limitation is found to be "severe" at step two of the evaluation process, that fact does not necessarily render it "sufficiently severe" at step five.  See Hoopai, 499 F.3d at 1076 (holding that even though plaintiff's back pain and depression were found "severe" at step two, they were not "sufficiently severe" at step five).

1    Here, the ALJ found that Plaintiff's only "severe" impairments
2  at step two were hypertension and congestive heart failure
3  occurring in a compensated state. (AR 43). The ALJ did not find
4  Plaintiff's COPD to be "severe" at step two. (See AR 43). The ALJ
5  supported his conclusion with evidence of Plaintiff's continual
6  tobacco use and her ability to do daily activities like pulling
7  weeds twice a week, crocheting, and doing light housework. (AR
8  300, 330, 502-03). As a matter of law, an impairment, which is not
9  considered "severe" at step two, will not be "sufficiently severe"
10  at step five, which is the threshold for the requirement of a VE's
11  consultation. See id. ("...built into the step-five determination
12  and the grids is recognition that the claimant has met the threshold
13  requirement for a severe disability at step two."). Because
14  Plaintiff's COPD was the cause of her environmental restriction,
15  and this restriction cannot be considered "sufficiently severe" at
16  step five of the ALJ's evaluation, the ALJ was not required to seek
17  the consultation of a VE.

18

19    Furthermore, Plaintiff's testimony indicated that she was
20  having breathing issues in the past, but that she did not have "a
21  whole lot" of these issues at the time of her testimony. (AR 60).
22  (AR 502). This admission further illustrates that Plaintiff's COPD
23  did not have "more than a minimal effect on the ability to do basic
24  work activities." See Webb v. Barnhart, 433 F.3d 683, 686 (9th
25  Cir. 2005) (noting that "an impairment is not severe if it is merely
26  a slight abnormality (or combination of slight abnormalities) that
27  has no more than a minimal effect on the ability to do basic work
28  activities.") (quotations omitted).

# VIII.

## CONCLUSION

Consistent with the foregoing, IT IS ORDERED that Judgment be entered AFFIRMING the decision of the Commissioner.  The Clerk of the Court shall serve copies of this Order and the Judgment on counsel for both parties.


DATED:  August 2, 2016


                                                                                    /S/
                                                   SUZANNE H. SEGAL
                                                   UNITED STATES MAGISTRATE JUDGE


## NOTICE

**THIS DECISION IS NOT INTENDED FOR PUBLICATION IN LEXIS/NEXIS, WESTLAW OR ANY OTHER LEGAL DATABASE.**